1998 ND 67

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Timothy BOLINE, Defendant and Appellant.**

**Criminal Nos. 970277 and 970278.**

Supreme Court of North Dakota.

March 30, 1998.

Lonnie W. Olson, State's Attorney, Devils Lake, for plaintiff and appellee.

Scott R. Thompson, Thompson & Thompson, Devils Lake, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Timothy Boline appealed from Criminal Judgments of Conviction for possession of drug paraphernalia and driving under the influence of alcohol. Boline was convicted by the Ramsey County District Court following a Conditional Plea of guilty. We conclude there was reasonable suspicion to stop Boline and that the district court properly denied his motion to suppress evidence gathered as a result of that stop. We affirm.

I

[¶ 2] On February 5, 1997, the Lake Region 911 Emergency Management office in Devils Lake received a call from an unidentified caller. The caller hung up. The dispatcher called back and asked the female who answered if she had just called 911. The caller responded, "Yes I did. I'm okay."

[¶ 3] After taking down some preliminary information, the dispatcher asked what the problem was. The unidentified caller said, "My old man just started smacking me around. He was going into town. His name is Tim Boline. Pick him up if you want."

[¶ 4] The dispatcher asked if Boline had been drinking and the caller responded, "Yes he has."

[¶ 5] The caller gave a description of the vehicle. The caller continued, "I'm sick of getting smacked around. He just smacked me on the head and ... told me not to call again. So I didn't."

[¶ 6] The dispatcher took down the caller's address. Again the caller declared, "He's on his way into town. He just smacked me around. He's on his way into town, pick him up. He was drunk."

[¶ 7] The dispatcher assured the caller police officers would be alerted. The caller hung up. The caller did not identify herself, nor was she asked her name.

[¶ 8] After this call, the dispatcher advised Ramsey County Deputy Sheriff Craig Dix of the call. The dispatcher indicated Boline may be a drunk driver.

[¶ 9] While the dispatcher was advising Deputy Dix, Lake Region 911 Emergency Management received another call from the same number. The caller identified herself as Connie. "Ma'am, this is Connie again. He just left me and he just come back in here and said if I called the cops I'm going to be in trouble."

[¶ 10] Devils Lake Police Officer Mike Larson heard the radio traffic between Deputy

Dix and the dispatcher. From the radio traffic, Officer Larson knew Tim Boline was sought for assaulting a woman named Connie and that Boline was reported to have been drinking. Officer Larson contacted the dispatcher and asked to go to scramble. Scrambling prevented Deputy Dix from hearing Officer Larson's conversation with the dispatcher.

[¶ 11] On scramble, Officer Larson radioed the Law Enforcement Center to get Boline's license plate number and a description of the vehicle. Officer Larson then asked for Boline's brother's address and, assuming that is where Boline was headed, proceeded to that address. On the way, Officer Larson recognized Boline's vehicle pulling into a service station. Officer Larson radioed Deputy Dix to ask if Dix wanted Boline stopped. Deputy Dix said he did want Boline stopped.

[¶ 12] While Officer Larson was following Boline, Deputy Dix called the dispatcher on his cellular phone. Deputy Dix asked, "Who is the reporting party?" The following exchange took place:

DISPATCHER: His wife.

DEPUTY DIX: Well, I don't know who his wife is.

DISPATCHER: Well, is it Connie.

DEPUTY DIX: Connie Zuercher.

DISPATCHER: Oh geez.

DEPUTY DIX: He's not married.

DISPATCHER: I'm pretty sure she said her name was Connie.

[¶ 13] The dispatcher called the reporting number and asked Connie for her last name. The caller identified herself as Connie Zuercher.

[¶ 14] Meanwhile, at the service station, Officer Larson watched Boline get out of his car and enter the station. Officer Larson did not notice any signs of impairment. He followed Boline into the service station. Larson noticed an odor of alcohol. When Boline finished buying a pack of cigarettes, Larson approached and asked Boline to step outside with him. The two moved to the front seat of Larson's patrol car to talk.

[¶ 15] Officer Larson asked Boline what had happened at home. Boline said Connie had come home drunk and started fighting with him and that he decided to leave instead of fighting. Boline told Officer Larson he was better off leaving or the argument might have degenerated into a physical altercation.

[¶ 16] Larson asked Boline if he had been drinking. Boline admitted he had been drinking but not within the past hour. After Officer Larson conducted field sobriety tests he placed Boline under arrest. When Boline was taken out of the patrol car at the Devils Lake Law Enforcement Center, Officer Larson found a "one-hitter" made from a gun shell. A "one-hitter" is a small pipe used to smoke a small amount of marijuana.

[¶ 17] Boline was charged with Driving while Under the Influence of Alcohol, a class B misdemeanor, in violation of section 39–08–01, N.D.C.C., and Possession of Drug Paraphernalia, a class A misdemeanor, in violation of section 12.1–31.1–03, N.D.C.C. Boline filed a motion to suppress all of the evidence obtained from the stop, claiming his detention by Officer Larson was in violation of his constitutional and statutory rights. According to Boline, Officer Larson did not have information regarding any traffic violations, observe Boline's intoxication, or know the extent of any physical injuries to Connie Zuercher. The district court denied Boline's motion, concluding that under the totality of circumstances Officer Larson had a reasonable and articulable suspicion to stop Tim Boline.

[¶ 18] Boline entered a Conditional Plea of guilty under Rule 11(a)(2), N.D. R.Crim. P., preserving his right to contest the district court's denial of the motion to suppress on appeal from the Judgments.

## II

[¶ 19] The Fourth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), *State v. Manning,* 134 N.W.2d 91 (N.D.1965), and Article I, Section 8, of the North Dakota Constitution, which language is nearly identical to the Fourth Amendment, protect the people against unreasonable searches and seizures.

[¶ 20] On appeal, Boline claims Officer Larson's stop violated his rights because Larson did not have probable cause to exe-

cute a domestic violence arrest. *See* N.D.C.C. §§ 14–07.1–10(1); 14–07.1–11(2). Boline also argues state law does not allow for the temporary stop of a person for a domestic disturbance. *See* N.D.C.C. § 29–29–21. We conclude the district court properly denied Boline's motion for suppression and affirm the Criminal Judgments.

[¶ 21] On review, we resolve conflicts in the testimony in favor of affirmance. *State v. Halfmann*, 518 N.W.2d 729, 730 (N.D.1994). We will reverse a district court's denial of a motion to suppress if the disposition lacks "sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is ... contrary to the manifest weight of the evidence." *State v. Glaesman*, 545 N.W.2d 178, 181 (N.D.1996); *City of Fargo v. Thompson*, 520 N.W.2d 578, 581 (N.D.1994). We defer, however, to the district court to weigh the evidence and judge the credibility of witnesses. *Halfmann*, 518 N.W.2d at 730.

[¶ 22] The North Dakota Legislature enacted section 14–07.1–10(1), N.D.C.C., permitting the arrest of a person suspected of committing a crime involving domestic violence. The law presumes an arrest is the appropriate response in a domestic violence case. N.D.C.C. § 14–07.1–10(1). However, before an arrest for domestic violence is made, probable cause is required. *Id.* Thus, Boline alleges his stop at the service station was invalid because Officer Larson did not have probable cause to establish a domestic violence crime had been committed.

[¶ 23] Section 14–07.1–11(2), N.D.C.C., permits the arrest of a domestic violence perpetrator without a warrant. The arrest must be made within four hours from the time the officer determines there is probable cause to arrest. N.D.C.C. § 14–07.1–11(2). In addition, observation of the physical injury or impaired physical condition of the victim is required. *Id.* Thus, Boline claims Officer Larson's arrest lacked probable cause and was invalid because he did not actually observe any physical injury or impairment of Connie Zuercher.

[¶ 24] Despite Boline's assertions, neither of these domestic violence statutes apply to the present case. Boline was not, in fact, arrested for domestic violence by Officer Larson, he was arrested for possession of drug paraphernalia and driving under the influence of alcohol. As we noted in *Halfmann*, 518 N.W.2d at 730, there are three tiers of law enforcement-citizen encounters: "(1) arrests, which must be supported by probable cause; (2) [reasonable suspicion] stops, seizures which must be supported by a reasonable and articulable suspicion of criminal activity; and (3) community caretaking encounters, which do not constitute Fourth Amendment seizures." *Id.* (Citations omitted).

[¶ 25] Here, Boline was seized within the context of the Fourth Amendment when he was asked to step outside the service station and into Officer Larson's patrol car. "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Id.* at 731 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879, n. 16, 20 L.Ed.2d 889 (1968)).

[¶ 26] Although Boline was seized, he was not under arrest. Stepping foot inside a patrol car does not place a criminal suspect under arrest. *Cf. State v. Martin*, 543 N.W.2d 224, 227 (N.D.1996) (holding absent arrest or similar restraint, a person is not "in custody" for *Miranda* purposes even if the questioning takes place in a police car). *See U.S. v. Hawthorne*, 982 F.2d 1186, 1191–92 (8th Cir.1992) (determining a full-scale arrest did not occur when detective took suspect's bag, walked to police car, and suspect was told to sit in front seat of police car); *U.S. v. Moore*, 638 F.2d 1171, 1174–75 (9th Cir.1980) (placing suspects in caged police car and further detention after arrival of customs officials was not unreasonable and did not transform detention into arrest). *But see Peterson v. City of Plymouth*, 60 F.3d 469, 475–76 fn. 8 (8th Cir.1995) (holding in the context of civil rights action detention of plaintiff in back of patrol car was arrest as a matter of law, and prudent officer in same circumstances could not have reasonably believed otherwise).

[¶ 27] It was reasonable for Officer Larson to ask for a personal discussion relating to a domestic violence complaint outside of ear-

shot of the service station employee and in the privacy of his patrol car. Boline and Officer Larson were sitting in the front seat of the patrol car, and Larson's initial inquiry was to determine the validity of the domestic violence complaint. We conclude Boline was not under arrest when he was asked to sit in Officer Larson's patrol car. Boline's presence there was a temporary restraint of freedom indicative of a reasonable suspicion stop or "Terry stop." *Halfmann,* 518 N.W.2d at 730 (referring to *Terry v. State of Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

### III

[¶ 28] Boline argues, however, section 29–29–21, N.D.C.C., does not allow for the temporary stop of a person for a domestic disturbance. Section 29–29–21, N.D.C.C., provides in part:

"A peace officer may stop any person abroad in a public place whom he reasonably suspects is committing, has committed, or is about to commit:

1. Any felony.
2. A misdemeanor relating to the possession of a concealed or dangerous weapon or weapons.
3. Burglary or unlawful entry.
4. A violation of any provision relating to possession of marijuana or of narcotic, hallucinogenic, depressant, or stimulant drugs."

Boline asserts section 29–29–21, N.D.C.C., is an exclusive list of instances where reasonable suspicion stops are authorized. We rejected this argument in *City of Bismarck v. Uhden,* 513 N.W.2d 373, 376 (N.D.1994).

[¶ 29] We concluded the itemized reasons for a stop in section 29–29–21, N.D.C.C., were not exclusive of the instances where a stop on reasonable suspicion grounds is appropriate. *Id.* On the contrary, section 29–29–21, N.D.C.C., does not contain restrictive language. As we noted in *Uhden,* "the legislature has acquiesced in our decisions." *Uhden,* 513 N.W.2d at 376.[1] The purpose in enacting the statute was to allow for the stop and search of suspicious persons and prevent erroneous arrests. *Hearing on H.B. 399*

*Before House Judiciary Committee,* 41st N.D. Leg. Sess., (Feb. 13, 1969) (oral testimony of Cass County State's Attorney Gene Krueger). These same purposes are served by allowing reasonable suspicion stops in the context of domestic abuse cases.

[¶ 30] A domestic violence complaint requires prompt investigation. *Cf. Terry,* 392 U.S. at 23, 88 S.Ct. at 1881 (noting it would be poor police work for veteran police officers to fail to investigate individuals casing a store and wait until a robbery occurred). Zuercher claimed Boline returned before her last 911 call to threaten retaliation if she reported the abuse. In both conversations with the dispatcher, Zuercher was persistent in her allegations of domestic violence and her desire to have Boline "picked up" for it.

[¶ 31] Although we recognize domestic abuse complaints may be contrived, *Cf.* N.D.C.C. § 14–09–06.2 (stating false allegations of child abuse are to be considered in determining custody), the danger of delaying an investigation until the police have probable cause for arrest can have perilous consequences. *See, e.g., State v. Norman,* 507 N.W.2d 522, 523 (N.D.1993) (husband convicted of killing wife in presence of three children). The enactment of chapter 14–07.1, N.D.C.C., evidences the need for prompt intervention by law enforcement in domestic disputes involving violence. We conclude the police may stop a person in order to investigate an allegation of domestic violence when the police have a reasonable and articulable suspicion that domestic violence has occurred.

### IV

[¶ 32] Boline challenges the domestic violence complaint and characterizes it as an unreliable anonymous tip. A tip may provide the factual basis for a reasonable suspicion stop. *State v. Miller,* 510 N.W.2d 638, 640 (N.D.1994). On review, we consider the totality of the circumstances, including "the quantity, or content, and quality, or degree of reliability, of the information available to the officer." *Id.* Generally, when

---

1. One commentator has faulted our rejection of the exclusivity argument. *See* Thomas M. Lockney, *Justice Beryl Levine: Taking Her Title Seriously in North Dakota Criminal Cases,* 72 N.D. L.Rev. 967, 976 (1996) (criticizing *Uhden* as effectively repealing section 29–29–21 in dictum).

there is less quality or reliability to a tip, a greater quantity of information is required in order to create a reasonable suspicion. *Id.* A face-to-face informant is more reliable than an anonymous tipster. *Id.* at 640–41.

[¶ 33] Boline claims the report of an unidentified informant is not enough to establish a reasonable and articulable suspicion of domestic violence. Boline refers us to *State v. Miller*, 510 N.W.2d at 639, where a Wendy's Restaurant employee gave an anonymous tip indicating there was a possible drunk driver who "could barely hold his head up," at the drive-thru lane. In *Miller*, this court reversed the district court's denial of a suppression motion because the anonymous tip, short on reliability and specifics, was not supported by corroborating evidence. *Id.* at 645. The dispatcher heard the information from the Wendy's drive-thru attendant, but did not relay the information to the arresting officer who made the decision to stop. *Id.* at 643. This Court concluded the incomplete information relayed to the officer combined with the officer's observations of innocent facts were insufficient to justify a reasonable suspicion stop. *Id.* at 645.

[¶ 34] We do not agree with Boline's characterization of this 911 call as anonymous. The 911 Emergency Management Office is equipped with "Caller I.D.," which allowed the dispatcher to call the number back after the initial hang up. The dispatcher knew the call was coming from a residential listing for Tim Boline.

[¶ 35] Moreover, as the officer's reports reflect, in smaller North Dakota communities it is not uncommon for local law enforcement to be familiar with a great many of the people they serve. When the dispatcher reported Boline's wife complained about domestic violence, Deputy Dix knew Boline was not married but at times had a live-in relationship with Connie Zuercher. Deputy Dix apparently had knowledge of the Boline–Zuercher relationship. It was appropriate for Deputy Dix to use his prior knowledge of the parties to supplement Zuercher's report. *State v. Nelson*, 488 N.W.2d 600, 602–03 (N.D.1992) (concluding deputy's stop was justified by his own knowledge and that added by another officer). *Cf. State v. Thordarson*, 440 N.W.2d 510, 512 (N.D.1989) (concluding a reasonable suspicion stop is appropriate where an anonymous tip is bolstered by an officer's own senses); *Wibben v. N.D. State Hwy. Comm'r*, 413 N.W.2d 329, 332 (N.D. 1987) (concluding a reasonable suspicion stop is appropriate where officer verified details of tip by his own observations).

[¶ 36] It is apparent that Officer Larson, too, had knowledge of Tim Boline. Larson predicted where Boline was heading and asked the dispatcher to provide the address. As he proceeded to that address, Officer Larson recognized Boline's vehicle coming from the other direction. Upon recognizing the vehicle, Larson asked Deputy Dix whether he wanted Boline stopped. Dix gave the order to stop.

[¶ 37] Boline argues the scrambled conversations between Officer Larson and the dispatcher made Dix's order to stop invalid. However, as we have previously noted, "[w]here one officer relays a directive or request for action to another officer without relaying the underlying facts and circumstances, the directing officer's knowledge is imputed to the acting officer." *Miller*, 510 N.W.2d at 643 (citations omitted). Here, both Larson and Dix knew who Tim Boline was. Both officers knew Boline reportedly committed domestic violence on a complainant named Connie. Both heard the report that Boline was drunk. Deputy Dix also knew Connie, the reporting party, was Connie Zuercher, Boline's girlfriend. Considering the totality of the circumstances, Deputy Dix's order and Officer Larson's stop were supported by a reasonable and articulable suspicion.

[¶ 38] We conclude the district court correctly denied Boline's motion to suppress.

### V

[¶ 39] We affirm the Criminal Judgments of Conviction.

[¶ 40] SANDSTROM, NEUMANN, MARING, and MESCHKE, JJ., concur.