2001 ND 136

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Craig HEITZMANN, Defendant and Appellant.**

No. 20010017.

Supreme Court of North Dakota.

July 20, 2001.

**4**

H. Jean Delaney, Assistant State's Attorney, Valley City, for plaintiff and appellee.

Kerry S. Rosenquist, Rosenquist Law Office, Larimore, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Craig Heitzmann appealed from a criminal conviction entered upon his conditional guilty plea to class C felony possession of a controlled substance. We conclude the trial court did not err in denying Heitzmann's suppression motion because his Fourth Amendment rights were not violated during the search conducted in this case. We, therefore, affirm.

I

[¶ 2] On the evening of April 19, 2000, a Valley City police officer was on patrol when he received a call from a deputy on the Stutsman County Drug Task Force stating a pickup driven by Chris Jacobson, whose license was suspended, was coming toward the officer. At 9:09 p.m., the officer stopped the pickup, and the deputy pulled up behind the officer's vehicle. The officer arrested Jacobson for driving while his license was suspended and, after frisking him, placed Jacobson in the back of the officer's patrol car. The officer told Jacobson he was going to search the pickup incident to the arrest, and Jacobson stated there was an unloaded pistol without a clip "in the back of the vehicle." Before returning to Jacobson's pickup, the deputy told the officer that the passenger in the pickup was Heitzmann, who was on probation. The deputy had received "intel" indicating Heitzmann recently received a shipment of methamphetamine, and earlier the deputy had helped perform a probation search of Heitzmann's residence during which Heitzmann became "agitated." The deputy also informed the officer that the deputy would stay back from the pickup

because the deputy "didn't want to get into an argument or fight with [Heitzmann]." The deputy warned the officer to "be cautious."

██ The officer returned to the pickup and spoke to Heitzmann, who had appeared nervous when the officer stopped the pickup. The officer told Heitzmann that Jacobson was under arrest; the officer was going to search the pickup; and if Heitzmann had a valid driver's license and Jacobson "okayed it," the officer would release the vehicle to Heitzmann rather than impound it. The officer asked Heitzmann to step out of the pickup. The officer told Heitzmann he was going to do a quick pat-down for the safety of both Heitzmann and the officer.

[¶ 4] The officer testified Heitzmann appeared more nervous while getting out of the pickup and walking to the front of the vehicle. The officer tapped Heitzmann's pants pockets, and Heitzmann told the officer there was "Certs" in one pocket and money in the other pocket. The officer "felt a baggy of crushed substance that didn't feel like Certs to me." The officer then patted Heitzmann's jacket pockets, which contained "a bunch of stuff." When the officer asked Heitzmann to take the contents out of the jacket pockets, Heitzmann complied and then took a couple of steps, starting to go around the front of the pickup, but the officer grabbed Heitzmann's sleeve. Heitzmann stated he wanted to show the officer what was in the back of the pickup, but the officer responded he would first do the pat-down. According to the officer, Heitzmann was "pretty nervous" at this point, and the officer told Heitzmann that "[Heitzmann's] being nervous . . . ma[de] [the officer] nervous."

[¶ 5] The officer hung onto Heitzmann's right arm and tapped the wallet in Heitzmann's back pocket, removed it, and placed it on the hood of the pickup. Heitzmann then pulled his left arm out of the jacket, so the officer grabbed him by the back of his pants. The officer tapped the left front pocket of Heitzmann's pants, and Heitzmann said it contained money. After asking whether anything else was in that pocket, the officer removed a large "wad" of money, placed it on the hood of the pickup, and motioned for the deputy to come over. At that point, Heitzmann pulled his other arm out of the jacket and began running. The officer pursued and took Heitzmann down in the middle of the street. The deputy and the officer struggled to place Heitzmann in handcuffs, and Heitzmann's arm was broken in the scuffle. The officer called for an ambulance. At this point, Heitzmann yelled to the deputy: "[T]here's crank in my wallet." The officer and deputy found methamphetamine and a razor blade in Heitzmann's wallet on the hood of the pickup.

[¶ 6] Heitzmann was charged with class C felony possession of a controlled substance in violation of N.D.C.C. § 19–03.1–23. Heitzmann moved to suppress the contraband. The trial court denied the suppression motion, concluding Heitzmann's rights were not violated because the officer "acted reasonably in conducting a pat-down search of the defendant in an effort to complete his search of the automobile without fear that the defendant was armed and dangerous." Heitzmann conditionally pled guilty under N.D.R.Crim.P. 11(a)(2), reserving the right to appeal the denial of his suppression motion.

II

[¶ 7] Heitzmann claims the trial court erred in denying his suppression motion because the search violated his Fourth Amendment rights.

██ [¶ 8] Our standard of review of a trial court's denial of a suppression motion is well-established:

We will defer to a trial court's findings of fact in the disposition of a motion to suppress. Conflicts in testimony will be resolved in favor of affirmance, as we recognize the trial court is in a superior position to assess credibility of witnesses and weigh the evidence. Generally, a trial court's decision to deny a motion to suppress will not be reversed if there is sufficient competent evidence capable of supporting the trial court's findings, and if its decision is not contrary to the manifest weight of the evidence.

*State v. Wanzek,* 1999 ND 163, ¶ 5, 598 N.W.2d 811 (quoting *State v. Overby,* 1999 ND 47, ¶ 5, 590 N.W.2d 703). While we defer to the trial court's findings of fact, questions of law are fully reviewable. *Wanzek* at ¶ 5, 598 N.W.2d 811.

### A

[¶ 9] The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures. *City of Jamestown v. Dardis,* 2000 ND 186, ¶ 8, 618 N.W.2d 495. A person may be seized without being arrested. *State v. Boline,* 1998 ND 67, ¶ 26, 575 N.W.2d 906. Within the meaning of the Fourth Amendment, a seizure occurs whenever an officer stops an individual and restrains his freedom, and that seizure must be reasonable. *State v. Gilberts,* 497 N.W.2d 93, 95 (N.D. 1993). A seizure has occurred " '[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.' " *Boline* at ¶ 25, 575 N.W.2d 906 (quoting *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). A determination of reasonableness requires balancing the public interest with the individual's right to personal security free from arbitrary interference by police officers. *Gilberts* at 95.

[¶ 10] Heitzmann does not challenge the investigative stop of Jacobson's pickup, Jacobson's arrest, or the officer's right to search the passenger compartment of the pickup incident to Jacobson's arrest. In *Gilberts,* 497 N.W.2d at 96, this Court held that a vehicle passenger's Fourth Amendment rights were not violated when a law enforcement officer, who had arrested the driver for driving under suspension, asked the passenger to step out of the vehicle before the search of the vehicle incident to the arrest, even though the passenger had not violated any traffic laws and was not suspected of committing any crime. This Court reasoned:

We believe there are two grounds that justify Smith's request that Gilberts exit the car, and that make this brief intrusion upon Gilberts's privacy both reasonable and permissible under the Fourth Amendment. First, an officer is justified by safety reasons in ordering both the driver and the passengers out of a lawfully detained vehicle. *Bethea v. Commonwealth,* 14 Va.App. 474, 419 S.E.2d 249 (1992); *People v. Martinez,* 187 Mich.App. 160, 466 N.W.2d 380 (1991); *State v. Ferrise,* 269 N.W.2d 888 (Minn.1978). When the state's interest in the protection and safety of its police, who patrol the roadways, is weighed against the minor intrusion on a passenger's liberty in momentarily leaving a vehicle, safety predominates. Secondly, Smith was entitled to search the passenger compartment of the vehicle incident to the driver's arrest. [*New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981)]. To conduct the search safely and thoroughly, it was both necessary and reasonable for Smith to ask Gilberts and the other passenger to briefly leave the car. *United States v. Bell,* 762 F.2d 495 (6th Cir.1985). We hold that Gilberts's constitutional right to be free of unreasonable seizure was

not encroached when Smith ordered him out of the car for the search after the driver's arrest.

*Gilberts* at 96. *See also Maryland v. Wilson*, 519 U.S. 408, 415, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). Consequently, we conclude Heitzmann's Fourth Amendment rights were not violated when the officer had Heitzmann step out of the pickup for the purpose of conducting a search of the vehicle incident to Jacobson's arrest.

## B

▮▮▮▮ [¶ 11] *Gilberts* did not involve a separate search of a passenger who has stepped out of a vehicle upon the request of a law enforcement officer. There is no automatic search rule for companions of an arrestee. *See, e.g., Wyoming v. Houghton*, 526 U.S. 295, 303, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999); *Ybarra v. Illinois*, 444 U.S. 85, 92–96, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979); *United States v. Menard*, 95 F.3d 9, 11 (8th Cir.1996); *United States v. Flett*, 806 F.2d 823, 827 (8th Cir.1986); *United States v. Bell*, 762 F.2d 495, 498 (6th Cir.1985). Rather, a law enforcement officer may conduct a frisk, or a pat-down search, of a person only when the officer " 'possesses an articulable suspicion that an individual is armed and dangerous.' " *State v. Haverluk*, 2000 ND 178, ¶ 22, 617 N.W.2d 652 (quoting *Michigan v. Long*, 463 U.S. 1032, 1034, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)). As the United States Supreme Court explained in *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (footnote omitted):

> [T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. *Cf. Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Brinegar v. United States*, 338 U.S. 160, 174 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *Stacey v. Emery*, 97 U.S. 642, 645[, 24 L.Ed. 1035] (1878). And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. *Cf. Brinegar v. United States*, *supra*.

▮▮▮▮ [¶ 12] In this case, the deputy told the officer that Heitzmann had recently received a shipment of methamphetamine. The deputy told the officer to be "cautious" with Heitzmann because Heitzmann had become "agitated" with him during the earlier probation search.[1] Heitzmann had appeared nervous to the officer during the initial stop and became more nervous after being asked to step out of the pickup. Most important, however, Jacobson told the officer there was an unloaded pistol in the "back" of the pickup, the officer was unaware of its location, and it was becoming dark outside. Under the

---

1. In upholding the validity of the search in this case, the trial court found it unnecessary to consider the information the deputy related to the officer. However, when determining the constitutional validity of a *Terry* detention, courts must consider the totality of the circumstances. *Geiger v. Backes*, 444 N.W.2d 692, 693 (N.D.1989). The information given to the officer by the deputy is part of the totality of the circumstances of this case, and we will consider those facts in this opinion.

**8**

circumstances, we conclude the officer had a reasonable and articulable suspicion Heitzmann might be armed and dangerous, and a frisk or pat-down search of Heitzmann was warranted.

### C

[¶ 13] A valid *Terry* frisk consists "solely of a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault." *Sibron v. New York,* 392 U.S. 40, 65, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). A pocket search is distinct from a pat-down search. As this Court explained in *State v. Zearley,* 444 N.W.2d 353, 359 (N.D.1989), "the reasonableness of a patdown, without more, does not make a pocket search reasonable. A patdown is not simply a routine preliminary to a more extensive search. Before going further, the officer must have an articulable and reasonable suspicion that the person is armed and dangerous." Consequently, when an outside clothing pat-down search reveals the presence of an object of a size and density that reasonably suggests the object might be a weapon, the searching officer is entitled to continue the search to the inner garments where the object is located in order to determine whether the object is in fact a weapon. *State v. Zearley,* 468 N.W.2d 391, 392 (N.D.1991).

> "Weapon verification is essential if safety is to be preserved and a potentially volatile situation neutralized. We cannot impose a condition of certainty that the object is a weapon before allowing an officer to continue the pat search to the inner clothing sight [sic] where the object is located. To do so would frustrate the objective of the pat search. We can impose a condition that an officer's belief that the object is a weapon be reasonably grounded and not a mere subterfuge for a random search."

*Id.* (quoting *People v. Thurman,* 209 Cal. App.3d 817, 257 Cal.Rptr. 517, 521 (1989)). If an officer continues to explore a detainee's pocket after having concluded that it contains no weapon, the valid scope of a *Terry* search has been exceeded and any contraband discovered in the pocket must be suppressed. *See Minnesota v. Dickerson,* 508 U.S. 366, 378–79, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).

[¶ 14] In this case, Jacobson told the officer there was a pistol in the "back" of the pickup and the officer was not sure of its location. Heitzmann was a passenger in the pickup who may have had access to the gun, and Heitzmann was becoming progressively more nervous. The deputy told the officer that Heitzmann had recently received a shipment of methamphetamine and to be "cautious" with him. When the officer patted Heitzmann's jacket pockets, he noticed a "bunch of stuff" in the pockets. The officer was unable to tell if there was a weapon in the pockets. Because, as found by the trial court, the officer reasonably believed the bulges in the jacket pockets may have contained a weapon, we conclude the officer acted reasonably in asking Heitzmann to remove the contents of the jacket pockets and place them on the hood of Jacobson's pickup. *See, e.g., United States v. Strahan,* 984 F.2d 155, 158 (6th Cir.1993); *United States v. Anderson,* 859 F.2d 1171, 1177 (3rd Cir.1988); *United States v. Oates,* 560 F.2d 45, 62 (2d Cir.1977); *State v. Vasquez,* 167 Ariz. 352, 807 P.2d 520, 524 (1991).

### D

[¶ 15] At this point, the confrontation escalated. Heitzmann made quick evasive movements as though he was going to run around the front of the truck. The officer had to grab his sleeve. Nervous, evasive behavior is a pertinent factor in

determining reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. 119, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000). Heitzmann, who continued to appear more nervous, told the officer he wanted to show him something in the back of the pickup. The officer, who was also becoming more nervous because of Heitzmann's actions, told Heitzmann he first wanted to complete the pat-down. While hanging onto Heitzmann's right arm, the officer tapped the wallet in Heitzmann's back pocket, removed it, and placed it on the hood of the pickup. Heitzmann pulled his arm out of the jacket, necessitating that the officer hold onto him by the back of his pants. The officer then removed a "wad" of money from Heitzmann's pocket. The officer testified the wallet could have contained razor blades and the "wad" of money could have contained needles. Although the officer admitted he did not believe the wallet or money were weapons in themselves, the officer said he removed the items "[t]o make sure [Heitzmann] didn't have anything else in his pocket."

[¶ 16] Courts have recognized that a more intrusive *Terry* search may be constitutionally permissible when the detainee attempts to prevent an officer from performing an effective pat-down. *See, e.g., Adams v. Williams*, 407 U.S. 143, 148, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (upholding officer's seizure of gun from suspect's waistband without a prior pat-down because the suspect failed to comply with officer's request to step out of vehicle and instead rolled down window); *State v. Warren*, 124 Ariz. 279, 603 P.2d 550, 552 (1979) (upholding officer's reaching into suspect's bulging pants pocket where suspect pushed officer's hand away during attempt to frisk and continued to drop hands after hands had been placed against wall); *Shaver v. State*, 332 Ark. 13, 963 S.W.2d 598, 600 (1998) (upholding search of detainee's pockets even though bulge did not feel like a weapon, because officer was uncertain what contents of pocket were and detainee appeared agitated and was ordered to calm down); *Thomas v. State*, 231 Ga.App. 173, 498 S.E.2d 760, 762 (1998) (upholding immediate search of pocket where suspect refused to remove his hand from pocket and officer forcibly removed suspect's hand from pocket and reached in to search for weapon); *McGugan v. State*, 215 Ga.App. 535, 451 S.E.2d 460, 462 (1994) (upholding officer's reaching into suspect's pocket and retrieving packet of cocaine where suspect had refused to exit vehicle upon officer's request, resisted officer's attempt to place him against the vehicle so he could be frisked, and refused officer's request to identify the object in the pocket); *Hayes v. State*, 202 Ga.App. 204, 414 S.E.2d 321, 323–24 (1991) (upholding officer's reaching into suspect's pants pocket to determine whether it contained a weapon where suspect had frustrated officer's efforts to conduct pat-down by suspect's grabbing and pushing officer's hands away from pocket and by turning his body to prevent officer from touching outside of pocket); *State v. Alesso*, 328 N.W.2d 685, 688 (Minn.1982) (upholding officer's brushing suspect's hand aside and reaching into suspect's pocket where the suspect made a furtive movement toward the pocket as if reaching for a weapon); *State v. Kearney*, 183 N.J.Super. 13, 443 A.2d 214, 216 (1981) (upholding immediate search of pockets where suspect prevented officer from conducting pat-down by grabbing officer's hands and backing away from officer when officer attempted to touch bulge in suspect's clothing). These cases illustrate that, when faced with threatening conduct by a suspect during a *Terry* frisk, officers are entitled to take reasonable action to protect themselves, which may involve an immediate intrusive search of the suspect.

*Thomas,* 498 S.E.2d at 762. An officer may proportionately respond to the actions of a suspect. *Hayes,* 414 S.E.2d at 324.

[¶ 17] Under the circumstances of this case, we believe the officer's actions were a proportionate response to Heitzmann's actions. Heitzmann was attempting to frustrate the officer's patdown efforts. The officer was required to hold onto Heitzmann to attempt to frisk him because of Heitzmann's furtive movements and nervousness. We conclude the officer's removal of the wallet and wad of money from Heitzmann's pockets was reasonable under these extenuating circumstances.[2]

### E

[¶ 18] We reject Heitzmann's argument that the confrontation between him and the officer constituted an illegal arrest without probable cause. There is no bright line rule for evaluating whether an investigative detention has become a de facto arrest, and while the brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion, the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes must also be considered. *United States v. Sharpe,* 470 U.S. 675, 685, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). An officer is authorized to detain a person for as long as is reasonably necessary to effectuate the purpose of the detention. *State v. DuPaul,* 509 N.W.2d 266, 270 (N.D.1993). The right to make an

investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it, and the test of reasonableness under the Fourth amendment requires careful attention to the severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting the seizure or attempting to evade the seizure by flight. *See Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Officers are entitled to use the forcible means reasonably necessary to effectuate the detentive goals of investigation, maintenance of the status quo, or officer safety. *Rhodes v. State,* 945 S.W.2d 115, 117 (Tex.Crim.App.1997).

[¶ 19] In this case, Heitzmann's detention was relatively brief and the restriction of his movements was undertaken to effectuate the search of the pickup incident to Jacobson's arrest. Heitzmann's demeanor and actions justified a pat-down search, and when Heitzmann became uncooperative and began exhibiting evasive behavior, a more intrusive pocket search was justified. Heitzmann eventually escaped from the officer's grasp and attempted to flee, but was taken down in the street and handcuffed by the officer and deputy. When Heitzmann fled, the officer had not yet searched the pocket Heitzmann told him contained Certs, justifying a reasonable belief on the part of the officer and deputy that Heitzmann was attempting to free himself to gain access to a weapon in the unsearched pocket. Officers confronted with flight may stop a fugitive and investigate further. *See Illinois v. Wardlow,* 528 U.S. 119, 120 S.Ct.

---

**2.** Heitzmann's related argument that the search in this case violated N.D.C.C. § 29–29–21, is without merit. Section 29–29–21, N.D.C.C., is not applicable to investigatory stops of motor vehicles. *See City of Bismarck v. Uhden,* 513 N.W.2d 373, 376 (N.D.1994).

Moreover, the itemized reasons for a stop in N.D.C.C. § 29–29–21, are not exclusive of the instances where a stop on reasonable suspicion grounds is appropriate. *See State v. Boline,* 1998 ND 67, ¶ 29, 575 N.W.2d 906.

673, 676, 145 L.Ed.2d 570 (2000). Under these circumstances, Heitzmann cannot complain that the officer and deputy took forcible steps to detain him when Heitzmann's own evasive actions created the need for those steps. *See, e.g., United States v. Jackson,* 175 F.3d 600, 602 (8th Cir.1999) (holding it was reasonable for officer to tackle defendant to effect investigative stop when defendant began to flee upon seeing police); *United States v. Weaver,* 8 F.3d 1240, 1245 (7th Cir.1993) (holding officer's tackling of suspect after suspect began to flee did not convert a *Terry* stop into an arrest); *Tom v. Voida,* 963 F.2d 952, 958 (7th Cir.1992) (holding officer's chasing and attempting to handcuff *Terry* stop suspect after the suspect fled did not convert *Terry* stop into an arrest); *United States v. Taylor,* 716 F.2d 701, 709 (9th Cir.1983) (holding officer's requiring suspect to lie down and be handcuffed while frisk was performed did not transform *Terry* stop into an arrest); *Commonwealth v. Gwynn,* 555 Pa. 86, 723 A.2d 143, 149 (1998) (holding officer's actions of retrieving detainee's identification from knapsack, placing him in police car while identification was checked, and handcuffing him after he tried to escape were permissible to preserve status quo); 4 LaFave, *Search and Seizure* § 9.2(d) (1996). We conclude Heitzmann's encounter with the officer and deputy did not convert this permissible *Terry* detention into an illegal arrest.

### F

[¶ 20]   Neither the officer nor the deputy had further searched the items retrieved from Heitzmann's pockets and placed on the hood of Jacobson's pickup when Heitzmann candidly informed the deputy "there's crank in my wallet." Heitzmann does not challenge on other constitutional grounds the officers' subsequent seizure of methamphetamine from the wallet. We, therefore, conclude the search of Heitzmann did not violate his Fourth Amendment rights.

### III

[¶ 21]   There is sufficient competent evidence supporting the trial court's findings, and its decision is not contrary to the manifest weight of the evidence. We conclude the trial court did not err in denying Heitzmann's suppression motion.

[¶ 22]   The conviction is affirmed.

[¶ 23] GERALD W. VANDE WALLE, C.J., and DALE V. SANDSTROM, WILLIAM A. NEUMANN, and MARY MUEHLEN MARING, JJ.