McEvers, Justice, dissenting.
[¶22] I respectfully dissent. I agree with the district court that reasonable suspicion to extend the stop existed based on the totality of the circumstances.
[¶23] Looking at the entire event is required when looking at the totality of the circumstances, as is the consideration that law enforcement officers may take into account inferences that may elude a lay person. State v. Fields , 2003 ND 81, ¶ 13, 662 N.W.2d 242. There is no question the traffic stop in this case was lawful. In regard to the additional detention, the district court made the following findings of fact to support reasonable and articulable suspicion:
After approaching the vehicle and while speaking with Wills, [the deputy] observed that [the passenger] was smoking and ... was very reserved and did not appear to want to make eye contact with [the deputy]. [The passenger] indicated that he did not have his ID with him.... [The deputy] also noticed a rifle between Wills and the center console.
After obtaining the identifying information for both [the passenger] and Wills, [the deputy] started to return to his patrol vehicle but was stopped by Wills who indicated he would need to give [the deputy] more information about his rights to possess a firearm.
*83 Wills provided [the deputy] with a document from the FBI, called a UPI.... [The deputy] ran a criminal history check which reflected that both Wills and [the passenger] had prior drug-related offenses.... When [the deputy] approached the vehicle to issue the warning ticket he observed that both Wills and [the passenger] were now smoking .... Based on his training and education, [the deputy] found [the passenger's] smoking behaviors to be reflective of nervous behavior based on the short duration of the traffic stop and an indicator of an attempt to mask odors.... [The deputy] was informed that Wills and [the passenger] were traveling from Minot to Douglas. [The deputy] found the route to be unusual. Wills and [the passenger] were not traveling in the most direct route to Douglas.
[¶24] In addition to those facts specifically found by the district court, law enforcement testified to several additional facts, including: the deputy was trained in narcotics interdiction; the rifle was described as some type of assault rifle; Wills had previously been denied the purchase of a handgun due to improper paperwork or something of that nature; Wills had DNA on file for prior felony convictions; and there was a hit on CWIS (Central Warrants Index System) for the passenger for felony theft of a motor vehicle.
[¶25] "The concept of reasonable suspicion, like probable cause, is not 'readily, or even usefully, reduced to a neat set of legal rules.' " U.S. v. Sokolow , 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting Illinois v. Gates, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ). In Sokolow , the United States Supreme Court discussed the issue whether reasonable suspicion for a stop existed. Id. at 7, 109 S.Ct. 1581. In describing what is necessary for a stop, the Supreme Court stated:
The officer, of course, must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.' " The Fourth Amendment requires "some minimal level of objective justification" for making the stop.
Id. (internal citations omitted).
[¶26] In Sokolow , the United States Supreme Court took into consideration the following facts:
Paying $2,100 in cash for two airplane tickets is out of the ordinary, and it is even more out of the ordinary to pay that sum from a roll of $20 bills containing nearly twice that amount of cash. Most business travelers, we feel confident, purchase airline tickets by credit card or check so as to have a record for tax or business purposes, and few vacationers carry with them thousands of dollars in $20 bills. We also think the agents had a reasonable ground to believe that respondent was traveling under an alias; the evidence was by no means conclusive, but it was sufficient to warrant consideration. While a trip from Honolulu to Miami, standing alone, is not a cause for any sort of suspicion, here there was more: surely few residents of Honolulu travel from that city for 20 hours to spend 48 hours in Miami during the month of July.
490 U.S. at 8-9, 109 S.Ct. 1581. The Supreme Court concluded, "Any one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent travel. But we think taken together they amount to reasonable suspicion." Id. at 9, 109 S.Ct. 1581 (citations omitted). Likewise here, while many of the findings standing alone may mean very little, when the totality of the circumstances is considered, there was reasonable suspicion to detain Wills and his passenger.
*84 [¶27] The majority concedes that there was reasonable suspicion to investigate whether possession of the firearm by Wills was legal. Majority, at ¶ 11. The majority then concludes, suspicion of a firearms offense would not support extending the stop to conduct a dog sniff. Id. The majority's conclusion seems to rule out the possibility that a rifle may raise suspicion of crimes other than illegal possession of a firearm. It is rational to infer that a rifle in the possession of felons with prior drug convictions could be using it for an illegal purpose such as protection as part of a drug crime.
[¶28] Two convicted felons with prior drug offenses traveling with an assault rifle between them and acting nervous would raise my suspicion. I would affirm the district court's decision.
[¶29] Lisa Fair McEvers
Gerald W. VandeWalle, C.J.