# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3434

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Joshua Gomez Huerta, also known as | * | |
| Joshua Gomez-Huerta, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 15, 2011
Filed: September 13, 2011

_____

Before BYE, COLLOTON, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Joshua Gomez Huerta entered a conditional guilty plea to conspiracy to distribute 500 grams or more of a substance or mixture containing methamphetamine and 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. On appeal, he challenges the district court's[1] denial of a motion to suppress evidence. We affirm.

_____

[1]The Honorable Robert W. Pratt, Chief Judge, United States District Court for the Southern District of Iowa.

On June 24, 2009, United States Postal Inspector Kevin Marshall was conducting a routine examination of Express Mail packages at a mail processing center in Des Moines, Iowa, when a package on a mail cart caught his attention. According to Marshall, he first noticed the package because its seams were taped, it had a handwritten label, and it was mailed from California. Upon further examining the package, he observed other features that he considered suspicious: the package was mailed from a post office with a different ZIP code than the return address, it was addressed to an individual at a hotel, it consisted of two boxes that had been taped together to form one box, and one of the numbers in the return address had been scratched out.

Without moving the package, Marshall searched two electronic databases – a LexisNexis database created for law enforcement and the United States Postal Service (USPS) change-of-address database – for the return address written on the package. He discovered that the address was valid, but the name of the return addressee was not associated with the address in either database. Marshall also called the sender's telephone number, as listed on the package, but the number was "disconnected and no longer in service."

Marshall then removed the package from the mail cart, placed it in an adjoining building, and requested that an officer from the Des Moines Police Department bring a canine to sniff the package for drugs. The drug dog did not alert. So Marshall and the officer decided to conduct a controlled delivery of the package, which was addressed to "Josh Huerta/Gomez" at a room in a hotel in Des Moines.

At Marshall's request, an employee at the hotel's front desk called the room and informed its occupants that a package had arrived. Shortly thereafter, Huerta approached the front desk. He initially admitted that he was expecting a package from

California and identified himself as Josh Huerta or Josh Gomez. But after Marshall revealed that he was a law enforcement officer, Huerta declined to consent to a search of the package, and then denied knowing anything about it. Marshall later obtained a warrant to search the package and found that it contained methamphetamine.

A grand jury indicted Huerta on drug trafficking charges. Huerta moved to suppress the methamphetamine found in the package, on the ground that the search warrant was invalid. He also sought to suppress certain statements that he made during the controlled delivery. After a hearing, the district court denied both motions. Huerta then renewed his motion to suppress, arguing that Marshall seized the package without reasonable suspicion to do so, and that the duration of the seizure was unreasonable. The government conceded that Marshall seized the package when he removed it from the mail cart, but asserted that the seizure was supported by reasonable suspicion and was reasonable in duration.

The district court held a hearing on the motion. Inspector Marshall described why he was suspicious about the package based on its characteristics. He also testified about his experience, which included more than seven years investigating narcotics sent by mail. During that time, he investigated several hundred packages found to contain narcotics, and interviewed more than two hundred former drug traffickers about their methods. Marshall said that he spends three days per week examining Express Mail packages at the Des Moines mail processing center, and that each day he examines two hundred fifty to three hundred packages. He also described a "profile" developed by the Postal Service based on its study of packages found to have contained narcotics or financial matters related to narcotics.

Following the hearing, the district court denied Huerta's motion. The court concluded that the duration of the seizure was reasonable. The court also ruled that Marshall had reasonable suspicion to seize the package, but only "because of binding Eighth Circuit precedent."

The court concluded that five of the characteristics of the package that Marshall identified as suspicious – the handwritten label, the different ZIP codes for the return address and the place of mailing, the scratched-out number in the return address, the composition of the box, and the hotel destination – did not provide any reasonable basis for suspicion. In the court's view, the government must show that each purportedly suspicious characteristic, "however ubiquitous among criminals, is more associated with illicit activity than with innocent activity."

The court also expressed doubt about whether the package's taped seams and California origin were probative of criminal activity, but concluded that it was bound by this court's decisions to give some weight to those characteristics. The court determined that the irregularities with the sender phone number and the return address created a "weak" basis for suspicion. In conclusion, the court ruled that these last four factors, taken together, supported a reasonable suspicion that the package contained contraband.

Huerta then entered a conditional plea of guilty. On appeal, he challenges the denial of the motion to suppress.

## II.

The Fourth Amendment's protection against unreasonable searches and seizures extends to packages placed in the mail. *United States v. Johnson*, 171 F.3d 601, 603 (8th Cir. 1999). As such, a law enforcement officer may seize a package in the mail for investigative purposes only if he has reasonable suspicion that the package contains contraband. *United States v. Smith*, 383 F.3d 700, 704 (8th Cir. 2004). Huerta contends that Marshall seized the package when he removed it from the mail cart, and that he lacked reasonable suspicion to do so.

-4-

Although the sender of the package in question surrendered it to the United States Postal Service, and Marshall was an employee of USPS whose handling of the package did not delay its delivery, the government concedes that Marshall did seize the package when he removed it from the mail cart. *Cf. United States v. Van Leeuwen*, 397 U.S. 249, 253 (1970) ("No interest protected by the Fourth Amendment was invaded by forwarding the packages the following day rather than the day when they were deposited."); *United States v. Zacher*, 465 F.3d 336, 338 (8th Cir. 2006); *United States v. Va Lerie*, 424 F.3d 694, 707 (8th Cir. 2005) (en banc). We therefore assume for the sake of analysis that a seizure occurred and turn to whether Marshall had reasonable suspicion to seize the package. We review the district court's legal conclusions about reasonable suspicion *de novo*, and we review the court's underlying findings of historical fact for clear error. *See Ornelas v. United States*, 517 U.S. 690, 699 (1996); *United States v. Perdoma*, 621 F.3d 745, 748-49 (8th Cir. 2010), *cert. denied*, 131 S. Ct. 2446 (2011).

In view of the analysis employed by the district court and urged on appeal by Huerta, we think it useful at the outset to reiterate the standards that govern an inquiry into reasonable suspicion. Reasonable suspicion is "one of the relatively simple concepts embodied in the Fourth Amendment." *United States v. Sokolow*, 490 U.S. 1, 7-8 (1989). It is a level of suspicion "considerably less than proof of wrongdoing by a preponderance of the evidence." *Id*. at 7. In evaluating whether suspicion is reasonable, "we must consider the totality of the circumstances – the whole picture." *Id*. at 8 (internal quotation omitted). The inquiry is not "readily, or even usefully, reduced to a neat set of legal rules." *Id*. at 7 (internal quotation omitted).

Even where each factor cited by law enforcement to support a seizure is "not by itself proof of any illegal conduct and is quite consistent with innocent" activity, the sum of the factors taken together can amount to reasonable suspicion. *Id*. at 9. That any one factor, viewed in isolation from the others, is "by itself readily susceptible to an innocent explanation" does not justify giving that factor no weight

in the analysis. *United States v. Arvizu*, 534 U.S. 266, 274 (2002). This sort of "divide-and-conquer analysis" has been expressly rejected by the Supreme Court. *Id*. Reviewing courts must bear in mind as well that a law enforcement officer is "entitled to make an assessment of the situation in light of his specialized training" and experience. *Id*. at 276. That factors cited by an investigator are included in a "profile" developed by law enforcement does not "detract from their evidentiary significance as seen by a trained agent." *Sokolow*, 490 U.S. at 10.

Applying those standards to this case, we conclude that Inspector Marshall had reasonable suspicion to seize the package. Marshall testified that the name of the purported sender on the package was unrelated to the return address, and that the telephone number listed for the sender was disconnected on the day after the package was mailed. Through his more than seven years of experience of investigating mail containing narcotics and other dangerous substances, he learned that people shipping narcotics often use a fictitious name, address, or telephone number in order to avoid detection if law enforcement officers attempt to trace the package. While it is conceivable that a sender might inadvertently list an incorrect mailing address or coincidentally disconnect telephone service immediately after sending an overnight package, it was reasonable for Marshall to give weight to the presence of both suspicious factors on a single package. *See United States v. Lakoskey*, 462 F.3d 965, 976 (8th Cir. 2006) (return address contained fictitious name for address listed); *United States v. Gomez*, 312 F.3d 920, 922, 924-25 (8th Cir. 2002) (return address not associated with sender's name); *United States v. Morones*, 355 F.3d 1108, 1110, 1112 (8th Cir. 2004) (no phone numbers listed on package); *United States v. Demoss*, 279 F.3d 632, 635 (8th Cir. 2002) (same).

Other factors cited by Marshall – the package's taped seams, the California origin and handwritten label, the scratched-out number in the return address, the difference between the mailing zip code and the zip code on the return address, and the fact that the destination address was a hotel – while perhaps innocuous if viewed

independently, reinforce the suspicion when considered as part of the totality of the circumstances. Marshall explained that California is recognized as a drug source state, and that his experience has shown that senders of narcotics prefer to mail from zip codes different from their homes to avoid recognition. He testified, based on experience, that drug traffickers typically use handwritten labels; he had never in seven years seen a drug package with a typewritten label. They also tape heavily the seams of their packages to prevent canines from detecting the odor of narcotics if the package is investigated en route. He thought it suspicious that one of the numbers on the return address had been scratched out, because people tend to make mistakes if they are nervous or unsure of the address. He explained that delivery to a hotel heightens suspicion, because the residents typically are transient. It takes no great leap of logic to infer that a drug trafficker seeking to avoid detection would prefer to receive a package at a temporary residence that he can abandon quickly rather than at his permanent address. This court has recognized that many of these factors can support an articulable suspicion of drug trafficking when considered as part of an entire picture. *See, e.g.*, *Smith*, 383 F.3d at 704 (source State, handwritten label, and scratched-out return address); *Lakoskey*, 462 F.3d at 976 (handwritten label); *United States v. Logan*, 362 F.3d 530, 533-34 (8th Cir. 2004) (same); *United States v. Demoss*, 279 F.3d 632, 635 (8th Cir. 2002) (same); *United States v. Terriques*, 319 F.3d 1051, 1056-57 (8th Cir. 2003) (heavy taping); *Gomez*, 312 F.3d at 922, 924-25 (same); *see also United States v. Dennis*, 115 F.3d 524, 532 (7th Cir. 1997) (different zip codes for return address and place of mailing).

To be sure, Huerta posited innocent explanations for some or all of these circumstances. California is a populous State that accounts for a multitude of innocent packages. A law-abiding sender may ship from a different zip code than his home address if, for example, the closest post office is in a different zone or he ships from a business address rather than home. Innocent people send personal packages with handwritten labels and receive packages at hotels while traveling. The Postal Service recommends that all customers tape seams to reinforce a package before mailing.

But the investigation here showed that all of these factors – a number of which represent the optimal means for a drug trafficker to ship a package of narcotics and avoid detection – came together with respect to a single package.  We think these circumstances, along with an apparently fictitious return address and disconnected telephone number associated with the sender, gave the experienced postal inspector ample basis to suspect wrongdoing.  There was reasonable suspicion to seize the package.

* * *

The judgment of the district court is affirmed.

_____