# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 176

State of North Dakota,                                      Plaintiff and Appellee

v.

Michael Benjamin Wills,                                  Defendant and Appellant

No. 20180342

Appeal from the District Court of McLean County, South Central Judicial District, the Honorable Cynthia Feland, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Crothers, Justice.

Ladd R. Erickson, State's Attorney Office, Washburn, ND, for plaintiff and appellee; on brief.

Laura C. Ringsak, Bismarck, ND, for defendant and appellant.

**State v. Wills**

**No. 20180342**

**Crothers, Justice.**

[¶1]     Michael Wills appeals from a criminal judgment entered after he conditionally pled guilty to possession of a controlled substance with intent to deliver, reserving the right to appeal the denial of his motion to suppress evidence.  We reverse the district court criminal judgment and remand to permit Wills to withdraw his guilty plea.

I

[¶2]     In December 2017 a McLean County Sheriff K-9 unit stopped a car for speeding on a county road one and one-half miles from Max.  The deputy approached the vehicle four times during the traffic stop.  On the first approach the deputy observed the passenger smoking a cigarette and "acting reserved."  The deputy also noted a firearm in the vehicle.  Both Wills and the passenger provided identification.  The deputy asked why Wills was on the county road and Wills said he and his passenger were traveling from Minot to Douglas.  Despite their route being five to ten miles longer than the most direct route, the deputy did not inquire further regarding the purpose or route of the trip.

[¶3]     The deputy began walking to his patrol vehicle to start background checks on the occupants when Wills called him back.  On this second approach Wills provided documentation from the FBI regarding his firearm possession.  After a short interaction, the deputy returned to his patrol vehicle and retrieved records for both individuals.  Wills had a valid driver's license and neither occupant had open warrants.  Further criminal history searches on both individuals revealed convictions including for drug offenses, but no current cases or probation.  The deputy wrote a warning for exceeding the speed limit and approached the vehicle a third time to ask about the firearm.

[¶4]   The deputy did not deliver the warning for speeding on the third approach. Instead, he asked Wills for more information regarding the FBI documentation for firearm possession. The deputy was unfamiliar with the document and wanted clarification. After the inquiry, the deputy returned to his vehicle to finish the background checks and verify the documentation for firearm possession. During his time in the patrol vehicle, and before the fourth and final approach, the deputy decided he would search Wills' vehicle with or without Wills' consent.

[¶5]   The fourth approach to the vehicle began with the deputy issuing the written warning for speeding and ending the traffic stop. According to the deputy's report, "I ended my traffic stop and asked for consent to search the vehicle." Wills refused. The deputy instructed Wills to turn off the vehicle and wait inside while a K-9 completed a "sniff" of the vehicle perimeter to check for contraband. When the K-9 alerted on the passenger door, the deputy expanded the search and found controlled substances and paraphernalia.

[¶6]   Wills moved to suppress the evidence based on an unlawful search and seizure in violation of his Fourth Amendment and North Dakota constitutional rights. Wills argues the deputy was unable to articulate reasonable suspicion to extend his seizure after completion of the traffic stop and acted upon a mere hunch. The district court denied the motion and found the deputy, based on his training and experience, believed further criminal activity justified the continued investigation after the traffic stop ended. The district court found the deputy formed reasonable and articulable suspicion from the totality of the circumstances, including smoking behaviors, the indirect route of travel, the passenger's nervousness, and the occupants' criminal records.

II

[¶7]   In reviewing a district court's decision on a motion to suppress we defer to the district court's findings of fact, and we resolve conflicts in testimony in favor of affirmance because we recognize the district court is in a superior position to assess

2

the witnesses' credibility and weigh the evidence. *State v. Schmidt*, 2015 ND 134, ¶ 5, 864 N.W.2d 265. "A district court's findings of fact on a motion to suppress will not be reversed if there is sufficient competent evidence fairly capable of supporting the court's findings, and the decision is not contrary to the manifest weight of the evidence." *Id*. (quoting *State v. DeCoteau*, 1999 ND 77, ¶ 6, 592 N.W.2d 579). Questions of law are fully reviewable, and whether a finding of fact meets a legal standard is a question of law. *Schmidt*, at ¶ 5. Whether facts support a finding of reasonable and articulable suspicion is a question of law. *State v. Ostby*, 2014 ND 180, ¶ 6, 853 N.W.2d 556.

## III

[¶8] Wills argues the district court erred in denying his motion to suppress evidence because the deputy did not have reasonable suspicion to believe further criminal activity justified detaining and searching the vehicle after the traffic stop ended.

[¶9] The Fourth Amendment of the United States Constitution, and art. I, § 8 of the North Dakota Constitution protect individuals from unreasonable searches and seizures. The Fourth Amendment is violated by the continued seizure of a traffic violator after the purposes of the traffic stop are completed unless law enforcement has reasonable and articulable suspicion that criminal activity is afoot. *State v. Deviley*, 2011 ND 182, ¶ 9, 803 N.W.2d 561; *Rodriguez v. U.S.*, 135 S.Ct. 1609, 1614 (2015). To determine whether reasonable suspicion exists the court considers the totality of the circumstances under an objective standard. *State v. Asbach*, 2015 ND 280, ¶ 12, 871 N.W.2d 820. The question is whether a reasonable person in the deputy's position objectively would be justified to suspect the defendant was engaged in unlawful activity. *Id*. The court considers inferences and deductions an investigating officer makes based on their training and experience. *Id*. The concept of reasonable suspicion is not readily reduced to an orderly set of legal rules, but requires more than a "mere hunch." *State v. Fields*, 2003 ND 81, ¶ 13, 662 N.W.2d 242.

3

[¶10]   The deputy testified he was suspicious of Wills and his passenger for a number of reasons.   When the deputy approached the vehicle he noticed the passenger smoking and acting reserved.  The deputy testified he believed smoking could be an indication of nervousness or masking an odor.   The deputy's suspicion increased based on the occupants' story because the road where the traffic stop occurred was not the most direct path between the points of origin and destination.   The deputy also considered the criminal histories of the occupants before initiating the K-9 search.

[¶11]   The dissent would conclude that two individuals with felony convictions traveling with a rifle is sufficient suspicion to support the extended seizure here.   That information would, and did, support reasonable suspicion to investigate whether the possession of the firearm by Wills was legal.   Wills provided the deputy with a "document from the FBI, called a UPI."   The deputy questioned Wills about the firearm and apparently was satisfied with the combination of the document and the results of the criminal history check, because he did not further pursue a potential firearms offense.   Instead, the deputy went back to prepare a written warning to conclude the traffic stop.   Suspicion of a firearms offense would not support extending the stop to conduct a dog sniff, which can only detect the presence of controlled substances.

[¶12]   The district court found that individually the items noted by the deputy were insufficient to form reasonable suspicion.  In its order denying the motion to suppress the district court listed three factors contributing to the totality of the circumstances, including the smoking of multiple cigarettes, the occupants' indirect route between origin and destination, and the occupants' convictions.

[¶13]   The district court relied on the occupants smoking multiple cigarettes as an indicator of nervousness or possible scent masking.  Law enforcement may consider an individual's nervousness during a traffic stop as a factor in determining reasonable suspicion.  *State v. Adan*, 2016 ND 215, ¶ 15, 886 N.W.2d 841.

[¶14]   The deputy testified that upon his final approach to the vehicle he noted the passenger was smoking a new cigarette immediately after putting one out, and Wills

4

was smoking a cigarette for the first time. However, the deputy testified that he decided to search before his final approach to the vehicle so the only instance of nervous behavior he considered in determining reasonable suspicion was the passenger's smoking upon the initial approach. Defense counsel noted this inconsistency at the hearing, and the district court judge subsequently speculated the deputy might have noticed the smoking while inside his patrol car while deciding whether to search. The deputy did not testify to that fact, and speculation is an insufficient basis for concluding reasonable suspicion existed.

[¶15] The district court also relied on the occupants' indirect route between Minot and Douglas as a factor in determining reasonable suspicion. The district court considered the *Adan* factors and compared the inconsistency of travel plans in *Adan* to the indirect route in this case. In *Adan*, the occupants were on a cross-country trip and disagreed on their destination, and did not know the name of a passenger who allegedly rode with them for a portion of the trip. *Adan*, at ¶ 19. Here, Wills said they were traveling from Minot to Douglas, and the deputy did not ask further questions. The district court and defense counsel disagreed on the possibility Wills traveled to the gas station in Max. But discussion and disagreement between the judge and counsel is not evidence. Without the deputy making further inquiry during the traffic stop, and then testifying about facts he learned from the inquiry, the record lacks information supporting a guess that the route was for an unlawful purpose.

[¶16] The district court relied on the occupants' criminal histories as a factor in determining reasonable suspicion. Although insufficient alone, a person's criminal history can support a finding of reasonable suspicion. *State v. Fields*, 2003 ND 81, ¶ 15, 662 N.W.2d 242. Here, both occupants had criminal histories, including drug offenses, but neither had an open case nor were they on probation. The district court appropriately considered their criminal histories.

[¶17] The deputy testified the smoking behavior, indirect route and criminal histories of the occupants led him to the conclusion that "something just didn't seem right." The deputy invoked his "training and experience" in reaching this conclusion.

5

[¶18]   The Court is mindful that "a law enforcement officer is 'entitled to make an assessment of the situation in light of his specialized training' and experience." *United States v. Huerta,* 655 F.3d 806, 809 (8th Cir. 2011) (quoting *United States v. Arvizu*, 534 U.S. 266, 276, 122 S.Ct. 744 (2002)).  Yet an officer relying on training and experience may not simply identify behavior as suspicious without also explaining why "the officer's knowledge of particular criminal practices gives special significance to the apparently innocent facts observed."  *United States v. Johnson,* 171 F.3d 601, 604 (8th Cir. 1999).  Courts generally "require some explanation regarding how the officer's training endowed seemingly innocent facts with criminal significance." *Seymour v. City of Des Moines*, 519 F.3d 790, 798 (8th Cir. 2008).  To support detaining or searching persons or things, an officer cannot make a bald claim they possess "training and experience" permitting them to conclude, when an ordinary citizen might not, that criminal activity is afoot.  Instead the officer must articulate his or her training or experience and connect that training and experience to activity in the case.  Absent such articulation and connection, the conclusory phrase "training and experience" fails to meet the legal standard because reasonable suspicion requires more than a "mere hunch." *Fields*, at ¶ 13.

[¶19]   Here, the analysis went beyond weighing the evidence and determining the credibility of witnesses.  It included speculation and drawing inferences not supported by the record.  Eliminating that speculation and the deputy's untethered hunches, the evidence supporting the determination of reasonable suspicion is insufficient.  After the traffic stop ended the deputy needed renewed articulable suspicion to continue detention of the vehicle and passengers.  The record does not support the continued seizure and search of the vehicle after the deputy ended the traffic stop.


IV

[¶20]   The district court erred in denying the motion to suppress evidence because the deputy did not possess reasonable suspicion of further criminal activity to justify detaining and searching the vehicle after the traffic stop ended.  We reverse the

6

district court criminal judgment and remand to permit Wills to withdraw his guilty plea.

[¶21]   Daniel J. Crothers
        Jon J. Jensen
        Jerod E. Tufte

        McEvers, Justice, dissenting.

[¶22]   I respectfully dissent.  I agree with the district court that reasonable suspicion to extend the stop existed based on the totality of the circumstances.

[¶23]   Looking at the entire event is required when looking at the totality of the circumstances, as is the consideration that law enforcement officers may take into account inferences that may elude a lay person.  *State v. Fields*, 2003 ND 81, ¶ 13, 662 N.W.2d 242.  There is no question the traffic stop in this case was lawful.  In regard to the additional detention, the district court made the following findings of fact to support reasonable and articulable suspicion:

> After approaching the vehicle and while speaking with Wills, [the deputy] observed that [the passenger] was smoking and . . . was very reserved and did not appear to want to make eye contact with [the deputy].  [The passenger] indicated that he did not have his ID with him. . . . [The deputy] also noticed a rifle between Wills and the center console.
>
> After obtaining the identifying information for both [the passenger] and Wills, [the deputy] started to return to his patrol vehicle but was stopped by Wills who indicated he would need to give [the deputy] more information about his rights to possess a firearm.  Wills provided [the deputy] with a document from the FBI, called a UPI. . . . [The deputy] ran a criminal history check which reflected that both Wills and [the passenger] had prior drug-related offenses. . . .  When [the deputy] approached the vehicle to issue the warning ticket he observed that both Wills and [the passenger] were now smoking . . . .  Based on his training and education, [the deputy] found [the passenger's] smoking behaviors to be reflective of nervous behavior based on the short duration of the traffic stop and an indicator of an attempt to mask odors. . . .  [The deputy] was informed that Wills and [the passenger] were traveling from Minot to Douglas.  [The deputy] found the route to be unusual.  Wills and [the passenger] were not traveling in the most direct route to Douglas.

7

[¶24] In addition to those facts specifically found by the district court, law enforcement testified to several additional facts, including: the deputy was trained in narcotics interdiction; the rifle was described as some type of assault rifle; Wills had previously been denied the purchase of a handgun due to improper paperwork or something of that nature; Wills had DNA on file for prior felony convictions; and there was a hit on CWIS (Central Warrants Index System) for the passenger for felony theft of a motor vehicle.

[¶25] "The concept of reasonable suspicion, like probable cause, is not 'readily, or even usefully, reduced to a neat set of legal rules.'" *U.S. v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Illinois v. Gates,* 462 U.S. 213, 232 (1983)). In *Sokolow*, the United States Supreme Court discussed the issue whether reasonable suspicion for a stop existed. *Id*. at 7. In describing what is necessary for a stop, the Supreme Court stated:

> The officer, of course, must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" The Fourth Amendment requires "some minimal level of objective justification" for making the stop.

*Id.* (internal citations omitted).

[¶26] In *Sokolow*, the United States Supreme Court took into consideration the following facts:

> Paying $2,100 in cash for two airplane tickets is out of the ordinary, and it is even more out of the ordinary to pay that sum from a roll of $20 bills containing nearly twice that amount of cash. Most business travelers, we feel confident, purchase airline tickets by credit card or check so as to have a record for tax or business purposes, and few vacationers carry with them thousands of dollars in $20 bills. We also think the agents had a reasonable ground to believe that respondent was traveling under an alias; the evidence was by no means conclusive, but it was sufficient to warrant consideration. While a trip from Honolulu to Miami, standing alone, is not a cause for any sort of suspicion, here there was more: surely few residents of Honolulu travel from that city for 20 hours to spend 48 hours in Miami during the month of July.

490 U.S. at 8-9. The Supreme Court concluded, "Any one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent travel. But we think taken together they amount to reasonable suspicion." *Id.* at 9 (citations

8

omitted). Likewise here, while many of the findings standing alone may mean very little, when the totality of the circumstances is considered, there was reasonable suspicion to detain Wills and his passenger.

[¶27] The majority concedes that there was reasonable suspicion to investigate whether possession of the firearm by Wills was legal. Majority, at ¶ 11. The majority then concludes, suspicion of a firearms offense would not support extending the stop to conduct a dog sniff. *Id.* The majority's conclusion seems to rule out the possibility that a rifle may raise suspicion of crimes other than illegal possession of a firearm. It is rational to infer that a rifle in the possession of felons with prior drug convictions could be using it for an illegal purpose such as protection as part of a drug crime.

[¶28] Two convicted felons with prior drug offenses traveling with an assault rifle between them and acting nervous would raise my suspicion. I would affirm the district court's decision.

[¶29] Lisa Fair McEvers
Gerald W. VandeWalle, C.J.

9